NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2014-579


JMJ PROPERTIES, LLC

v.

TOWN OF AUBURN

Submitted: March 31, 2015
Opinion Issued: August 11, 2015


Bussiere & Bussiere, P.A., of Manchester (Emile R. Bussiere, Jr. on the brief), for the petitioner.


Wadleigh, Starr & Peters, PLLC, of Manchester (Jennifer L. St. Hilaire on the brief), for the respondent.


BASSETT, J. The petitioner, JMJ Properties, LLC (JMJ), appeals an order of the Superior Court (Delker, J.) granting the motion for summary judgment filed by the respondent, the Town of Auburn, and denying the cross-motion for summary judgment filed by JMJ. The trial court ruled that the Town, after learning in 2012 that JMJ's property no longer qualified for current use assessment because of a July 2011 change in use, was authorized to issue supplemental 2012 property tax bills based upon the market value of the property. JMJ argues that the trial court erred when it concluded that: (1) RSA 76:14 (2012) does not apply under the circumstances in this case; and (2) the

Town had the authority pursuant to RSA 79-A:7 (Supp. 2014) to issue supplemental tax bills in December 2012 based upon market value. Because we hold that RSA 79-A:7 authorizes the Town to issue supplemental tax bills under these circumstances, we affirm.

The material facts are not in dispute. JMJ owns an 18-lot cluster subdivision in Auburn. The Town taxed the entire parcel based upon its current use status for the 2011 and 2012 tax years. In July 2011, JMJ began construction of a road in the subdivision. Accordingly, at that time, the entire parcel changed to a use that did not qualify for current use assessment. See RSA 79-A:7, I. The Town, however, did not learn about the change in use until the summer of 2012. In December 2012, the Town issued a Land Use Change Tax (LUCT) bill for the entire subdivision. Additionally, because the Town issued the 2012 tax bill based upon the incorrect understanding that the parcel was still in current use as of April 1, 2012, the Town "abated" the 2012 tax bill for the entire parcel. It then issued supplemental tax bills for the individual lots, which reflected the market value of each lot for the entire tax year beginning on April 1, 2012.

JMJ requested an abatement, arguing that the Town improperly issued the supplemental tax bills in violation of RSA 76:14, and that the market valuation of each lot was excessive. See RSA 76:14 (permitting municipalities to issue supplemental tax bills only when property has "escaped taxation"). The Town denied the request to abate the supplemental tax bills on the individual lots.

JMJ appealed the Town's decision to the superior court. JMJ asserted that: (1) under RSA 76:14, the Town could not issue supplemental tax bills because it had already issued tax bills for the 2012 tax year, and, therefore, the JMJ property had not "escaped taxation" for that tax year, see RSA 76:14; and (2) the Town's "assessment was higher than the fair market value of the property." The Town filed a motion for summary judgment on the first issue, asserting that it had the authority under RSA 76:14 to issue supplemental tax bills. JMJ objected, and filed a cross-motion for summary judgment on that same issue.

The trial court concluded that RSA 79-A:7 "specifically authoriz[ed] [the] Town to tax the land at its full ad valorem value only after the LUCT bill ha[d] been issued," and, therefore, "the supplemental tax bills issued by the Town . . . based on the ad valorem value were properly issued pursuant to the statutory authority granted in RSA 79-A:7." See RSA 79-A:7. The trial court also ruled that RSA 76:14 and Pheasant Lane Realty Trust v. City of Nashua, 143 N.H. 140 (1998), do not apply to this case. See Pheasant Lane, 143 N.H. at 141-44 (concluding that municipality could not issue supplemental tax bill under RSA 76:14 for property that had been undervalued because "undervalued property, as calculated by the assessing authority, has not

2

escaped taxation"). Accordingly, the trial court granted the Town's motion for partial summary judgment, denied JMJ's cross-motion, and set the case for trial. Shortly thereafter, the parties advised the court that the market valuation issue had been resolved by agreement. This appeal followed.

In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. Granite State Mgmt. & Res. v. City of Concord, 165 N.H. 277, 282 (2013). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." Id. (quotation omitted). If, as in this case, the parties filed cross-motions for summary judgment on a set of undisputed facts, we need only review, de novo, the trial court's application of the law to the facts. Cricklewood on the Bellamy Condo. Assoc. v. Cricklewood on the Bellamy Trust, 147 N.H. 733, 736 (2002).

JMJ argues that the trial court erred when it found that RSA 79-A:7 allowed the Town to issue supplemental tax bills in December 2012 for the 2012 tax year based upon the property's market value, rather than requiring the Town to wait until the beginning of the new tax year — April 1, 2013 — to issue the supplemental tax bills. The Town contends that this argument was not preserved for our review. Ordinarily, we will not review arguments that were not timely raised before the trial court. Camire v. Gunstock Area Comm'n, 166 N.H. 374, 377 (2014). This rule, however, is not absolute. Id. Preservation is a limitation on the parties to an appeal and not the reviewing court. Id. Here, JMJ did not challenge the application of RSA 79-A:7 before the trial court. Nonetheless, because the issue of whether RSA 79-A:7 authorized the Town to issue supplemental tax bills presents a question of law that can be answered without further development of the factual record, and because this case involves an issue important to municipalities and taxpayers, we will address the issue on the merits. See id.

Resolution of this issue requires us to engage in statutory interpretation. We review matters of statutory interpretation de novo. Eby v. State, 166 N.H. 321, 341 (2014). On questions of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of a statute considered as a whole. Id. We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. at 341-42. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. Henderson Holdings at Sugar Hill v. Town of Sugar Hill, 164 N.H. 36, 38-39 (2012). Our goal is to

apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme. Id. at 39.

RSA chapter 79-A governs current use taxation. See RSA ch. 79-A (2012 & Supp. 2014). The statute "reflects the legislature's determination that it is in the public interest to encourage the preservation of open space and to prevent the loss of open space due to property taxation at values incompatible with open space usage." Appeal of Town of Charlestown, 166 N.H. 498, 500 (2014) (quotations omitted). "To effectuate this purpose, open space land may be taxed at its current use, rather than at its highest and best use." Id.; see RSA 79-A:5 (2012). Pursuant to RSA 79-A:7, I-a, "[l]and which is classified as open space land and assessed at current use values shall be assessed at current use values until a change in land use occurs." The statute also provides that, "[t]hereafter, the land which has changed to a use which does not qualify for current use assessment shall be taxed at its full RSA 75:1 value." RSA 79-A:7, II(f). RSA 75:1, in turn, requires that property that is not in current use be taxed based upon its "market value," which is defined as "the property's full and true value." RSA 75:1 (2012) (amended 2013, 2014).

"Land which has been classified as open space land and assessed at current use values . . . shall be subject to a land use change tax when it is changed to a use which does not qualify for current use assessment." RSA 79-A:7, I. The LUCT is "due and payable" to the municipality in which the property is located "at the time of the change in use." RSA 79-A:7, II.

JMJ argues that the Town could not issue tax bills for the individual lots based upon the market value of each lot until after the beginning of the tax year after the issuance of the LUCT bill, which, in this case, means on or after April 1, 2013. The Town counters that "thereafter" as used in RSA 79-A:7, II(f) means anytime after the LUCT bill is issued. The Town contends that requiring municipalities to wait until the tax year that begins after the issuance of the LUCT bill to tax properties based upon market values would result in a windfall to property owners and contravene the purpose of the statutory scheme. Consequently, the narrow question before us is whether the trial court erred when it concluded that, given the change in use in 2011 and the Town's issuance of the LUCT bill in late 2012, RSA 79-A:7 authorized the Town to issue supplemental tax bills in December 2012 based upon market value assessments of the lots. We conclude that the trial court did not err.

The interpretation of "thereafter" advanced by the Town supports the trial court's ultimate determination; however, it is unnecessarily limited because the market value assessment is authorized at the time of the change in use, regardless of when the LUCT bill is issued. This interpretation comports with the plain and ordinary meaning of "thereafter": "after that" or "from then on." Webster's Third New International Dictionary 2372 (unabridged ed. 2002). If the legislature had intended that municipalities be

4

barred from issuing tax bills based upon "the property's full and true value" until the tax year after the issuance of the LUCT bill, as JMJ contends, it could have included language to that effect. See RSA 75:1. Rather, the legislature used "thereafter" without reference to any required interval between the change in use and the taxation of property based upon market value. We will not add language to the statute that the legislature did not see fit to include. Eby, 166 N.H. at 342. Therefore, we conclude that a market value assessment is authorized at the time of the change in use, regardless of when the municipality learns that the change in use occurred, or when it issues a LUCT bill. See RSA 79-A:7.

Our interpretation of RSA 79-A:7, II(f) is also consistent with the policy embodied by the entire statutory scheme relating to current use. "The purpose of the current use statute is to encourage the preservation of open space, by reducing property taxes on land that the taxpayer enrolls as open space land in current use." Woodview Dev. Corp. v. Town of Pelham, 152 N.H. 114, 116 (2005) (quotation omitted). "[T]hat the land was once in current use does not entitle the landowner or developer to a reduced assessment of the full and true value of the land once it is no longer in current use." Id. at 118. Indeed, the statute specifies that land shall be assessed at current use values only "until a change in land use occurs." RSA 79-A:7, I-a. Therefore, to allow JMJ to avoid paying 2012 property taxes based upon the "full and true value" of the individual lots merely because the Town was not aware of the property's change in current use status at the time it issued the 2012 tax bill would contravene the statute's purpose, and improperly and unfairly shift the 2012 tax burden to other taxpayers in the municipality.

Here, it is undisputed that, because of the construction of the road, the entire parcel owned by JMJ no longer qualified for current use status as of July 2011. Further, there is no dispute that on April 1, 2012 — the beginning of the 2012 tax year — the entire parcel no longer qualified for current use assessment. Thereafter, the Town issued a LUCT bill in December 2012, and it taxed the parcel based upon its "full RSA 75:1 value." RSA 79-A:7, II (c), (f). Accordingly, given the plain language of RSA 79-A:7 and the purpose of the entire statutory scheme, we hold that RSA 79-A:7 authorized the Town's issuance of supplemental tax bills in December 2012.

Because we affirm the trial court's grant of summary judgment in favor of the Town, we need not address the Town's alternative argument that its issuance of supplemental tax bills was authorized under RSA 76:14.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.