NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2015-0694


MARK E. McDONOUGH

v.

PATRICK M. McDONOUGH & a.

Argued: September 14, 2016
Opinion Issued: December 23, 2016


Sheehan Phinney Bass & Green, Professional Association, of Manchester (James P. Harris on the brief and Christopher N. Cole orally), for the plaintiff.


Orr & Reno, P.A., of Concord (James F. Laboe and Jeffrey C. Spear on the joint brief, and Mr. Laboe orally), for defendant TASC Technical Services, LLC.


Cook, Little, Rosenblatt & Manson, PLLC, of Manchester (Arnold Rosenblatt and Kathleen M. Mahan on the joint brief), for defendant Patrick M. McDonough.


Matthew J. McDonough, self-represented defendant, by joint brief.

DALIANIS, C.J.  The plaintiff, Mark E. McDonough, appeals an order of the Superior Court (McNamara, J.) denying him summary judgment and granting summary judgment to the defendants, TASC Technical Services, LLC (TASC), Patrick M. McDonough, and Matthew J. McDonough.  The trial court ruled that TASC was not required to dissolve on September 30, 2015.  We affirm.

I. Background

The trial court found that the following facts were not disputed.  In 1992, brothers Mark, Matthew, and Patrick McDonough established TASC, a corporation that provides technical engineering services.  In September 1995, the brothers converted TASC to a Limited Liability Company (LLC).  As of January 2014, the New Hampshire Revised Limited Liability Company Act (the Act), RSA chapter 304-C (2015 & Supp. 2016), governs TASC.  See RSA 304-C:5, II (2015).

The brothers had a falling out.  As a result, Mark sued the defendants seeking a declaration that TASC must dissolve by September 30, 2015, pursuant to its certificate of formation and operating agreement.  TASC's certificate of formation states that "[t]he latest date on which the limited liability company is to dissolve is September 30, 2015."  Section 5 of TASC's operating agreement states: "The Company shall have a term beginning on the date the Certificate of Formation is filed . . . and shall continue in full force and effect for a term of twenty (20) years, unless sooner terminated or continued pursuant to the further terms of this Agreement."  On August 7, 2015, Matthew and Patrick—constituting a majority of TASC's members—voted to dissolve TASC and then immediately voted to revoke the dissolution.

Both parties moved for summary judgment.  After a hearing, the trial court ruled that: (1) the August 7 dissolution and revocation had no effect on TASC's governing documents; and (2) TASC was not required to dissolve because its operating agreement permits a majority of its members to continue the company.  Consequently, it denied summary judgment to Mark and granted summary judgment to the defendants.  This appeal followed.

On appeal, Mark argues that: (1) the trial court erred when it determined that a majority of TASC's members could continue TASC beyond September 30, 2015; and (2) permitting a majority of TASC's members to continue the company causes him substantial harm because the company is not obligated to pay him any consideration if he withdraws.

II. Standard of Review

In reviewing a trial court's rulings on cross-motions for summary judgment, "[w]e consider the evidence in the light most favorable to each party

in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." Conant v. O'Meara, 167 N.H. 644, 648 (2015) (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." Id. (quotation omitted). "We review the trial court's application of the law to the facts de novo." Id. (quotation omitted).

TASC is governed by both its operating agreement and the Act. See RSA 304-C:25, I (2015) (stating that "[t]he laws of . . . New Hampshire govern . . . [t]he internal affairs of a[n] [LLC]"); RSA 304-C:16 (2015) (defining "operating agreement" to mean an agreement of the members "as to the internal affairs of a[n] [LLC] or the conduct of its business"); RSA 304-C:41, I (2015) (making an LLC's operating agreement binding upon its members). Therefore, to resolve the issues in this appeal, we need to construe both the Act and TASC's operating agreement.

"We review matters of statutory interpretation de novo." JMJ Properties, LLC v. Town of Auburn, 168 N.H. 127, 130 (2015). "On questions of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of a statute considered as a whole." Id. "We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation." Id. "Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme." Id.

"Because the operating agreement is a form of contract, we will apply the general rules of contract interpretation." Lakes Region Gaming v. Miller, 164 N.H. 558, 562 (2013). "When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." Birch Broad. v. Capital Broad. Corp., 161 N.H. 192, 196 (2010). "We give an agreement the meaning intended by the parties when they wrote it." Id. "Absent ambiguity, however, the parties' intent will be determined from the plain meaning of the language used in the contract." Id. (quotation omitted). "The interpretation of a contract, including whether a contract term is ambiguous, is ultimately a question of law for this court to decide." Id. "Accordingly, we review a trial court's interpretation of a contract de novo." Id.

3

III. Discussion

Mark first argues that TASC's operating agreement and the Act required the company to dissolve by September 30, 2015. We disagree.

The Act requires an LLC's members to dissolve the company as provided for in the company's operating agreement. See RSA 304-C:129, I (2015) ("A[n] [LLC] shall be dissolved as provided in the operating agreement."). Section 5 of TASC's operating agreement provides: "The Company shall have a term beginning on the date the Certificate of Formation is filed . . . and shall continue in full force and effect for a term of twenty (20) years, unless sooner terminated or continued pursuant to the further terms of this Agreement." (Emphasis added.)

Mark argues that, unless amended, the plain language of TASC's operating agreement required dissolution by September 30, 2015. This argument, however, overlooks the language "unless sooner terminated or continued pursuant to the further terms of this Agreement." Although Mark is correct that the members could unanimously amend section 5 of TASC's operating agreement to remove or change the dissolution clause, that does not preclude other means of continuing TASC. If TASC's members had intended that the only means of continuing the company would be an amendment of section 5, they could have explicitly said so. Instead, they chose to more broadly state that TASC would exist for 20 years unless the company was "continued pursuant to the further terms of this Agreement."

In this case, TASC's operating agreement and the Act provide such a way for TASC's members to continue the company. Section 4 of TASC's operating agreement authorizes TASC to "have and exercise all powers now or hereafter conferred by [the Act]." This includes RSA 304-C:130, III (2015), which provides: "After the members have dissolved the limited liability company under RSA 304-C:129, I, they may revoke the dissolution at any time before completing the wind-up of the limited liability company." Thus, TASC's members have two means to avoid the effects of the September 30, 2015 dissolution. They can either revoke the dissolution pursuant to RSA 304-C:130, III, or unanimously amend section 5 of TASC's operating agreement.

Mark argues that a decision to revoke a dissolution pursuant to RSA 304-C:130, III also requires a unanimous vote. He asserts that because the legislature specifically included the word "majority" in RSA 304-C:130, I, the omission of that word in RSA 304-C:130, III demonstrates legislative intent that the phrase "the members" in paragraph III refers to all members of an LLC. Because accepting Mark's interpretation would require us to ignore the plain language of RSA 304-C:67, I (Supp. 2016), and add a unanimity requirement to RSA 304-C:130, III that is not present in the words of the

statute, we conclude that a majority of members may revoke a dissolution pursuant to RSA 304-C:130, III.

RSA 304-C:130, I, is one of a number of provisions in RSA chapter 304-C specifying that certain member decisions must be made by a majority vote. See, e.g., RSA 304-C:48, II, :50, II, :94, :129, II, :150, IV, :156, I, :188, II (2015). Other provisions in RSA chapter 304-C specify that the decisions to which they refer must be made by a unanimous vote. See, e.g., RSA 304-C:100, IV-V, :120, :121, I, :122, I, :124 (2015). Still other provisions, like RSA 304-C:130, III, do not specify whether the member decision at issue must be made by majority or unanimous vote. See, e.g., RSA 304-C:34, II, :66, I (2015), :210 (Supp. 2016).

When a provision does not specify whether the member decision to which it refers must be made by majority or unanimous vote, RSA 304-C:67 applies. RSA 304-C:67, I, provides that, unless RSA 304-C:67, II or certain other enumerated provisions apply, or unless "the operating agreement provides otherwise, all matters that [the Act] reserves for decision by the members shall be decided by majority vote of the members."

Thus, to determine whether the decision to revoke a dissolution under RSA 304-C:130, III may be made by majority or unanimous vote, we first examine whether that decision is one of the decisions listed in RSA 304-C:67, II. RSA 304-C:67, II provides that, unless the operating agreement states otherwise, a unanimous vote of all of an LLC's members is required to: (1) amend a certificate of formation; (2) amend an operating agreement; (3) amend a promise to make a contribution; (4) grant additional membership rights to a member; or (5) admit a new member. Because the decision to revoke a dissolution is not one of the decisions enumerated in RSA 304-C:67, II, we then examine whether RSA 304-C:130, III is one of the provisions that RSA 304-C:67, I specifies is exempt from its provisions. Because RSA 304-C:130, III is not exempt, RSA 304-C:67, I, applies.

Pursuant to RSA 304-C:67, I, we must examine the operating agreement. Section 5 of TASC's operating agreement does not specify whether TASC may be continued by majority or unanimous vote. Likewise, TASC's operating agreement is silent regarding how its members may decide to revoke a dissolution. Therefore, because TASC's operating agreement does not provide otherwise, RSA 304-C:67, I, controls, and TASC's members may by majority vote revoke a dissolution pursuant to RSA 304-C:130, III.

Mark next argues that, even if a majority of TASC's members had the power to revoke the September 30, 2015 dissolution, they have not yet done so. Even though the trial court ruled that the August 7 voluntary dissolution and subsequent revocation had no effect on whether TASC was required to dissolve by September 30, 2015, the trial court still ruled that TASC was not required to

dissolve by September 30, 2015, because its members could continue the company pursuant to the terms of the operating agreement. Although at the time of the trial court's order, Matthew and Patrick had not voted to revoke the September 30, 2015 dissolution, they still have time to do so. See RSA 304-C:130, III (providing that an LLC's members may revoke a dissolution "at any time before completing the wind-up of the [LLC]"). Matthew and Patrick represented to the trial court that they intend to continue TASC. Based upon these facts, the trial court could conclude that Matthew and Patrick intended to revoke the dissolution. Accordingly, we cannot conclude that the trial court erred by granting summary judgment to Matthew and Patrick even though they had not yet voted to revoke TASC's dissolution.

Mark next argues that TASC's certificate of formation requires, without exception, that the company dissolve after 20 years. Specifically, he argues that: (1) the plain language of the certificate of formation requires dissolution; and (2) allowing TASC's members to continue TASC without amending the certificate of formation renders the certificate of formation meaningless.

TASC's certificate of formation states that "[t]he latest date on which the limited liability company is to dissolve is September 30, 2015." However, the Act does not require an LLC's members to dissolve the company when the duration listed in the certificate of formation expires. See RSA ch. 304-C. The Act requires an LLC's members to dissolve the company only as provided in its operating agreement. See RSA 304-C:129, I. Thus, there is no requirement that TASC's members dissolve the company after the twenty-year duration stated in its certificate of formation.

Furthermore, we disagree with Mark's argument that this interpretation renders the certificate of formation superfluous. Under the Act, an LLC's certificate of formation and its operating agreement are distinct documents that are separately defined and serve different purposes. See RSA 304-C:16 (defining operating agreement); RSA 304-C:31 (Supp. 2016) (stating certificate of formation requirements).

The primary purpose of an LLC's operating agreement is to govern how the parties will manage the internal affairs of the LLC and the LLC's business. See RSA 304-C:16. By contrast, the primary purpose of the certificate of formation is to serve as notice to the secretary of state and the public that the company is operating as a New Hampshire LLC. See RSA 304-C:33 (2015). The certificate of formation is not rendered superfluous just because the Act looks to an LLC's operating agreement, not its certificate of formation, to determine when the LLC's members must dissolve the company.

Mark next argues that the trial court erred when it determined that "[t]here is no unfairness in requiring [him] to comply with the operating agreement" because "Mark, or for that matter any dissatisfied member, can

6

withdraw from the LLC and obtain his share of the LLC['s] assets." Mark argues that this was error because "[w]hile the Superior Court was correct that the Act allows for members to voluntarily withdraw, . . . [it] overlooked the financial consequences of such a withdrawal" in that "[t]he Operating Agreement does not obligate the Company to pay any consideration or buy-out to [Mark] if he elects to withdraw" and the "Act . . . states that [Mark] would not be entitled to any compensation for his membership interest upon his withdrawal." See RSA 304-C:105, II (2015) (providing that, unless the operating agreement otherwise provides, "a dissociating member is not entitled to receive any payment for the value of the member's membership rights, including the member's limited liability company interest, as of the date of dissociation").

We decline to address the merits of this argument because Mark has not provided a record demonstrating that he preserved it for our review. It is Mark's burden, as the appealing party, to demonstrate that he raised his appellate arguments before the trial court. Dukette v. Brazas, 166 N.H. 252, 255 (2014).

In his reply brief, Mark argues that he preserved his argument by arguing before the trial court that forcing him "into a perpetual relationship with his brothers" would be "fundamentally unfair" because "his interests in the company are restricted and inalienable, as he has no open market for them." Mark's argument that his interests in the LLC "are restricted and inalienable," such that he has "no open market" for them is a different argument from the argument he raises on appeal. Mark's argument that there is "no open market" for his interests in the LLC did not preserve, for our review, his appellate argument that the trial court erred when it stated that, upon withdrawal, he could obtain his share of the LLC's assets because RSA 304-C:105, II precludes the LLC from paying him compensation should he withdraw.

To preserve the argument that Mark now raises on appeal, Mark would have had to present it in a motion for reconsideration, which he did not do. The trial court must have had the opportunity to consider any issues asserted by the appellant on appeal; thus, to satisfy this preservation requirement, any issues which could not have been presented to the trial court prior to its decision must be presented to it in a motion for reconsideration. See LaMontagne Builders v. Bowman Brook Purchase Group, 150 N.H. 270, 274 (2003); N.H. Dep't of Corrections v. Butland, 147 N.H. 676, 679 (2002). Because Mark did not preserve his appellate argument for our review, we decline to address its merits.

IV. Conclusion

We have reviewed the remainder of Mark's arguments and conclude that they do not warrant further discussion.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).  Therefore, for the reasons stated above, we hold that TASC's operating agreement and the Act permit a majority of TASC's members to continue the company beyond September 30, 2015.  Accordingly, we affirm the trial court's grant of summary judgment in favor of the defendants.

Affirmed.

HICKS, CONBOY, and LYNN, JJ., concurred.