NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2018-0060

PRO DONE, INC.

v.

TERESA BASHAM & a.

Argued: October 11, 2018
Opinion Issued: May 3, 2019

Rath, Young and Pignatelli, P.C., of Concord (Michael S. Lewis, Kenneth Bartholomew, and R. Terry Parker on the brief, and Mr. Lewis orally), for Pro Done, Inc.

Shaheen & Gordon, P.A., of Concord (William E. Christie, Timothy J. McLaughlin, and Alexander W. Campbell on the brief, and Mr. McLaughlin orally), for Teresa Basham, Individually and as Non-Independent Trustee of the Paul R. Hooper 1998 GST Exempt Trust, Terrence Lee Hooper, and Timothy John Hooper.

Ransmeier & Spellman, P.C., of Concord (Biron L. Bedard), for John C. Ransmeier, Trustee of the Paul R. Hooper 1997 Trust, joined in the brief of Teresa Basham, Terrence Lee Hooper, and Timothy John Hooper.

HANTZ MARCONI, J.  The plaintiff, Pro Done, Inc., appeals an order of the Superior Court (Kissinger, J.) dismissing its amended complaint against the defendants, Teresa Basham, individually and as non-independent trustee of the Paul R. Hooper 1998 GST Exempt Trust, Terrence Hooper, Timothy Hooper, and John Ransmeier, trustee of the Paul R. Hooper 1997 Trust,[1] for breach of contract, tortious interference with contractual relations, and civil conspiracy. Specifically, the plaintiff challenges the trial court's ruling that an alleged violation of a certain contractual provision does not provide a basis for the plaintiff's claims.  We reverse and remand.

The plaintiff's amended complaint alleges the following facts.  Upon their father's death in 2009, Teresa Basham, Timothy Hooper, and Terrence Hooper (sibling defendants) each received a portion of their father's one-third ownership interest in three companies known as the Pro-Cut entities, to be held in trust by John Ransmeier.  In 2012, the sibling defendants negotiated with Joseph Willey, another owner of the Pro-Cut entities, to sell their ownership interests.  They eventually agreed upon a sale price, and in November 2013, Ransmeier, on the sibling defendants' behalf, executed fifteen Securities Redemption Agreements (SRAs) with the Pro-Cut entities, the terms of which were stated to be binding upon "the heirs, personal representatives, successors and assigns of the parties."  Ransmeier also executed on behalf of the sibling defendants a document attached to each SRA entitled "Release," which states, in pertinent part:

> Other than as set forth in the Agreement, the Seller hereby fully, finally and forever releases, discharges, quit claims and covenants not to sue and otherwise agrees not to enforce any claim, cause of action, right, title or interest . . . against, the Company, its respective officers, directors, managers, members, employees, agents, and representatives as well as their successors and assigns . . . of, from, and with respect to any and all claims . . . in connection with any prior ownership interest in the Company by the Seller, including but not limited to any claim based on any future transaction that the Company or any unit holder may enter into in relation to the equity of the Company.

Each sibling defendant received approximately $750,000 as a result of the transactions.

After these transactions, one of the Pro-Cut entities, Brake Solutions, Inc., acquired another Pro-Cut entity.  It then changed its name to Pro-Cut International, Inc.  In May 2014, three unrelated companies, collectively known

---

[1] The complaint also named as a defendant Bank of America, N.A., as trustee of the Paul R. Hooper 1998 GST Exempt Trust.  Bank of America was dismissed from this lawsuit following a settlement agreement with the plaintiff and is not a party to this appeal.

as Snap-on, purchased the Pro-Cut entities for approximately $41.3 million. Pro-Cut International, Inc. was then renamed Pro Done, Inc. Pro Done, Inc., the plaintiff in this case, alleges it is a resulting company, successor, or assignee of the Pro-Cut entities that were parties to the SRAs.

After Snap-on's purchase of the Pro-Cut entities, the sibling defendants filed a lawsuit, with the assistance of Ransmeier, in the United States District Court for the District of New Hampshire against Willey and trustees of trusts that were members of the Pro-Cut entities at the time of the Snap-on transaction. Although the plaintiff is not a party to the federal action, the defendants have served subpoenas on the plaintiff and Snap-on entities as part of that lawsuit. Snap-on has also asserted rights to indemnification against the plaintiff.

The plaintiff subsequently filed this action in superior court against the defendants, asserting claims of breach of contract, and, in the alternative, tortious interference with contractual relations and civil conspiracy. The plaintiff's amended complaint sought "any and all such damages as it has sustained or will sustain by reason of Defendants' conduct, including any consequential damages," as well as a permanent injunction barring the defendants from participating in any action against the plaintiff and its affiliates, exemplary and punitive damages to deter future illegal conduct, and reasonable attorney's fees and costs in litigating the present action.

The defendants moved to dismiss the plaintiff's action, arguing, inter alia, that the release agreements, including the covenant not to sue contained therein, do not give rise to a cause of action for breach of contract. In dismissing the plaintiff's amended complaint, the trial court, relying on Kaye v. Wilson-Gaskins, 135 A.3d 892, 906-07 (Md. Ct. Spec. App. 2016), concluded that a covenant not to sue functions only as an immediate release, rather than a promise of future forbearance that may be breached, unless the agreement clearly demonstrates that the parties intended for the obligee to recover consequential damages incurred as a result of the obligor's failure to honor the covenant. See Kaye, 135 A.3d at 904, 906-07. Finding "no clear indication in the Releases that the parties contemplated consequential damages to be award[ed] as a result of their breach," the trial court concluded that the release agreements operated as releases rather than covenants not to sue, and therefore a violation of the release agreements could not constitute a basis for a breach of contract action. The trial court also concluded that the plaintiff's alternative claims of tortious interference with contractual relations and civil conspiracy were "not reasonably susceptible of a construction that would permit recovery" because those claims "rest on a theory that the parties . . . to the Releases maintained a contractual relationship that imposed ongoing duties to the Plaintiff."

3

The plaintiff moved for reconsideration. The trial court denied the plaintiff's motion, and this appeal followed.

In reviewing the trial court's grant of a motion to dismiss, our standard of review is whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. Slania Enters. v. Appledore Med. Grp., 170 N.H. 738, 741 (2018). We assume that the plaintiff's pleadings are true and construe all reasonable inferences in the light most favorable to the plaintiff. Id. We then engage in a threshold inquiry that tests the facts alleged by the plaintiff against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. Id.

On appeal, the plaintiff makes numerous, yet related, arguments challenging the trial court's dismissal of its breach of contract claim. Its central arguments may be distilled into one contention: the trial court's order ignored express terms of the release agreements — in which the defendants "covenant[ed] not to sue and otherwise agree[d] not to enforce any claim" against the plaintiff — and denied the plaintiff the opportunity to seek consequential damages for breach of the contract, contrary to New Hampshire law.

The defendants argue that, as a matter of law, a covenant not to sue operates only as a release. Therefore, they argue, the act of suing in violation of a covenant not to sue does not give rise to a breach of contract action unless the covenant "include[s] language evidencing an intent that a breach of the covenant would entitle the non-breaching party to recover consequential damages." Based upon this principle, the defendants contend that the trial court properly concluded that the plaintiff failed to state a cause of action for breach of contract.

The parties' arguments present a question of first impression for this court: whether New Hampshire law recognizes a cause of action for breach of contract based upon a covenant not to sue where the contract does not expressly provide that the non-breaching party is entitled to consequential damages for breach of the covenant. We hold that it does.

Because the release agreements are part of a contract, we apply the general rules of contract interpretation. See McDonough v. McDonough, 169 N.H. 537, 541 (2016); Moore v. Grau, 171 N.H. 190, 194 (2018). When interpreting a written agreement, we give the language used by the parties to the agreement its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. Town of Pembroke v. Town of Allenstown, 171 N.H. 65, 70 (2018). We give an agreement the meaning intended by the parties when they wrote it. Found. for Seacoast Health v. Hosp. Corp. of America, 165 N.H. 168, 172

4

(2013).  Absent ambiguity, we determine the parties' intent from the plain meaning of the language used in the contract.  Id.  The interpretation of a contract is ultimately a question of law for this court to decide.  McDonough, 169 N.H. at 541.  Accordingly, we review a trial court's interpretation of a contract de novo.  Id.

Under New Hampshire law, "[a] breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract."  Lassonde v. Stanton, 157 N.H. 582, 588 (2008) (quotation and brackets omitted).  Pursuant to the release agreements here, the sibling defendants agreed to several terms relating to any current or future claims they may have against the Pro-Cut entities — they agreed to "fully, finally and forever release[], discharge[], quit claim[] and covenant[] not to sue and otherwise agree[] not to enforce any claim" relating to the sibling defendants' ownership interests against the Pro-Cut entities and its respective officers, directors, managers, members, employees, agents, representatives, successors, and assigns.  The plaintiff argues that the words "covenant[] not to sue" and "agree[] not to enforce any claim" constitute promises separate and distinct from a mere "release[]."

We have recognized a release or discharge of a claim as an absolute extinguishment of a debt or obligation.  See Durell v. Wendell & al., 8 N.H. 369, 372 (1836); see also Stateline Steel Erectors v. Shields, 150 N.H. 332, 338 (2003).  We have also recognized a covenant not to sue as distinct from a release.  See Stateline, 150 N.H. at 338 ("Unlike a release, a covenant not to sue does not relinquish a right or claim, or extinguish a cause of action." (quotation omitted)).  A covenant not to sue constitutes an agreement or promise of future forbearance from suing the other party on certain claims.  Id. ("[T]he party making the covenant not to sue agrees only not to assert any right or claim based upon the obligation." (quotation omitted)); see also Black's Law Dictionary 443 (10th ed. 2014) (defining "covenant" as "[a] formal agreement or promise, usu. in a contract or deed, to do or not do a particular act").  Thus, instead of extinguishing a claim, a covenant not to sue "recognizes the continuation of the obligation or liability."  Stateline, 150 N.H. at 338.  Based upon the plain meaning of the terms of the release agreements, see Seacoast Health, 165 N.H. at 172, the covenant not to sue constitutes a promise not to bring an action against the Pro-Cut entities or their respective officers, directors, managers, members, employees, agents, representatives, successors, and assigns, which, in the absence of legal excuse, may be breached.  See Lassonde, 157 N.H. at 588.

Despite the express terms in the release agreements, the defendants contend that the covenant not to sue in the release agreements does not provide a basis for a breach of contract action in the absence of language expressly allowing for the non-breaching party to recover consequential damages.  The defendants point to no authority in New Hampshire that

5

requires a contract to contain such language in order to sustain a valid breach of contract claim. Cf. Audette v. Cummings, 165 N.H. 763, 770 (2013) (a party claiming damages for breach of contract must show, by a preponderance of the evidence, that the damages were caused by the defendant's alleged wrongful act and the extent and amount of such damages). Nevertheless, the defendants contend that the covenant not to sue carries the same meaning as a release in the absence of express contractual language demonstrating that the parties intended otherwise. Because, according to the defendants, a release cannot be breached because complete performance is tendered at the moment a release is effectuated, the defendants contend that neither a violation of a release nor a violation of a covenant not to sue can provide the basis for a breach of contract action. See Kaye, 135 A.3d at 904; see also Restatement (Second) of Contracts § 284(2), at 392 (1981) ("The release takes effect on delivery . . . and, subject to the occurrence of any condition, discharges the duty.").

To support their assertion that a covenant not to sue operates merely as a release, the defendants point to general principles in early common law to assert that a covenant not to sue is now, essentially, legally obsolete. Relying on the historical context of releases described in Corbin on Contracts, the defendants assert that covenants not to sue: (1) carried legal significance only in early cases involving joint obligors; and (2) are no longer recognized as contractual promises in order to avoid the problem of the "circuity of action" that arose in litigation between parties to the covenant. See 13 Sarah Howard Jenkins, Corbin on Contracts § 67.14, at 143-45 (rev. ed. 2003).

In circumstances involving joint obligors, courts at early common law construed the release of one joint obligor as a release of all other joint obligors. Jenkins, supra at 143; see also, e.g., Durell, 8 N.H. at 372 (explaining that if the contract "operates as a release of one of the signors of the note, it discharges the whole"). Because a release "is a defense in any action by the claimant to enforce[] the right previously released," Jenkins, supra § 67.9(1), at 77, a joint obligor could ostensibly utilize a release as an affirmative defense to a lawsuit brought by the releasing party, even if the joint obligor was not a party to the release. Cf. Durell, 8 N.H. at 372; Parker v. Holmes, 4 N.H. 97, 98-99 (1827). Nevertheless, where a release of one joint obligor "expressly reserv[ed] all rights against the other joint obligors," courts interpreted the release "as a mere contract not to sue the one rather than a release" as to all. Jenkins, supra § 67.14, at 143. This construction enabled the injured party to settle with one joint obligor while still maintaining its ability to pursue claims against the remaining joint obligors. See id.

However, unlike a release, which could be raised as an affirmative defense to a lawsuit brought by the party who released the claim, courts initially did not recognize a covenant not to sue as an affirmative defense to a lawsuit brought in violation of the covenant. Bellefonte Re Ins. Co. v. Argonaut

Ins. Co., 586 F. Supp. 1286, 1287 (S.D.N.Y. 1984), aff'd, 757 F.2d 523 (2d Cir. 1985). In lawsuits involving the two parties to the covenant, where a party sues the other party in violation of the covenant, the refusal of courts to recognize the covenant as an affirmative defense resulted in a "circuity of action": because the defendant could not plead a covenant not to sue as an affirmative defense, the defendant's only remedy was to bring a countersuit against the breaching party to recover the damages the breaching party might obtain in the original, unlawful lawsuit. See Jenkins, supra at 145 (describing the "unnecessary and highly undesirable circuity of action").

For this reason, many courts, including this court, came to allow parties to a covenant not to sue to plead the covenant as an affirmative defense, just as they would a release. See Durell, 8 N.H. at 372 ("[T]o avoid circuity of action such a covenant may be pleaded as a release, but it can be so pleaded only betwixt the actual parties to the contract . . . ."); Parker, 4 N.H. at 98 ("[W]hen the obligee covenants not to sue the obligor at all, such covenant may to avoid circuity of action be pleaded as a release."); see also Moore, 171 N.H. at 194-95 (applying law that recognizes a release as an affirmative defense to terms that "read[] as a covenant not to sue"); Bellefonte, 586 F. Supp. at 1287 ("The obvious inefficiency of this two step process led the courts of equity to enjoin suits prohibited by a covenant not to sue, and the law courts eventually came to allow the covenant to be pleaded as a bar.").

Based upon the circumstances in which courts allow covenants not to sue to be pled in the same manner as releases, the defendants contend that, in the absence of joint obligors, "common law courts began to treat covenants not to sue as releases" in general. According to the defendants, it is because of "this evolution over time" that "courts now require that . . . a covenant not to sue . . . include language evidencing an intent that a breach of the covenant would entitle the non-breaching party to recover consequential damages" in order for the covenant to give rise to an action for breach of contract.

The defendants draw too broad an inference from this precedent. Our early cases established that a covenant not to sue one joint obligor allowed the injured party to maintain claims against the other joint obligors. See Durell, 8 N.H. at 372 (explaining that "where there are two or more obligors, or promissors, a covenant not to sue one is never construed as a release, as that would discharge the other signers"); see also Colby v. Walker, 86 N.H. 568, 570 (1934) (explaining that if a settlement agreement contains "a reservation of rights against third parties, or if the document takes the form of a covenant not to sue," the agreement does not bar subsequent claims against another tortfeasor); Snow v. Chandler, 10 N.H. 92, 93 (1839) ("[A] covenant not to sue one of several debtors will not operate to discharge all the debtors . . . ."). These cases also established that, conversely, a release of one joint obligor

7

would extinguish the claims against all other joint obligors.[2] See, e.g., Durell, 8 N.H. at 372. In distinguishing covenants not to sue from releases, we focused on the intent of the parties as evidenced by the language in the agreements. See, e.g., Snow, 10 N.H. at 93 ("[I]t cannot be inferred from such a covenant [not to sue one of several debtors] that it was the intention to discharge the debt."); Durell, 8 N.H. at 372 (explaining that construing a covenant not to sue against a joint obligor as a release "would directly conflict with the manifest intention of the parties").

It is true that, in cases distinguishing covenants not to sue from releases, we predominantly dealt with situations involving joint obligors who were not parties to the release or covenant. See, e.g., Durell, 8 N.H. at 371-72. However, we have not limited our recognition of the distinction between covenants not to sue and releases solely to disputes between a party to the covenant and joint obligors who are not parties to the covenant. See Stateline, 150 N.H. at 333-34, 338-39 (recognizing the distinction between the legal effect of a covenant not to sue and the legal effect of a release on the parties to the covenant). Nor have we supplanted an action for breach of a covenant not to sue with its assertion as an affirmative defense. Thus, our recognition that a covenant not to sue may be raised as an affirmative defense by a party to the covenant does not, by itself, foreclose a breach of contract action based upon a violation of the covenant.

Nevertheless, relying on a principle set forth in Corbin, the defendants contend that courts now construe "a contract never to sue" generally as "indicat[ing] an intention to discharge the obligor in any case not involving a joint obligor" as a result of the problem created by the "circuity of action." See Jenkins, supra at 144. Because this assertion set forth in Corbin is not supported by citations to any authority, case law or otherwise, the scope of this principle is unclear. See id. Moreover, this principle stands in sharp contrast with our rules of contractual interpretation which instruct us to give the words of a contract their reasonable meaning to determine the parties' intent, Seacoast Health, 165 N.H. at 172, including all parts of a contract wherever reasonably possible, Robbins v. Salem Radiology, 145 N.H. 415, 419 (2000). When language to the agreement contains an express promise not to sue, we cannot presume, contrary to the meaning of the language in the agreement, that the parties instead intended this promise to constitute a release. See Seacoast Health, 165 N.H. at 172.

Additionally, in permitting parties to plead covenants not to sue as an affirmative defense, we cited a policy reason for doing so — avoiding the

_____

[2] We note that the enactment of RSA 507:7-h (2010) altered this common law rule as applied to releases "given in good faith to one of 2 or more persons liable in tort for the same injury," such that a release under these circumstances "does not discharge any other person liable upon the same claim unless its terms expressly so provide."

"circuity of action" problem. See Durell, 8 N.H. at 372; Parker, 4 N.H. at 98. We did not adopt this permissive rule by construing the legal effect of an express covenant not to sue as that of a release. See Durell, 8 N.H. at 372; Parker, 4 N.H. at 98. Instead, we have continuously recognized the distinction between an express covenant not to sue and a release, even as we have allowed covenants not to sue to be raised as an affirmative defense. See Stateline, 150 N.H. at 338 (explaining that, "[u]nlike a release, a covenant not to sue does not relinquish a right or claim, or extinguish a cause of action," but instead "recognizes the continuation of the obligation or liability" (quotation omitted)); see also Moore, 171 N.H. at 194-95 (permitting a provision which "read[] as a covenant not to sue" to be raised as an affirmative defense, but noting the discussion in Stateline, 150 N.H. at 338, regarding the distinction between a covenant not to sue and a release).

Furthermore, as a practical matter, a breach of contract action based upon a covenant not to sue does not create the "circuity of action" problem where, as here, the plaintiff seeks consequential damages that have resulted from the defendants' alleged violation of the covenant, rather than solely the amount of any judgment obtained by the defendants in the original lawsuit. See Drop Anchor Realty Trust v. Hartford Fire Ins. Co., 126 N.H. 674, 678 (1985) ("Consequential damages are reasonably foreseeable losses that flow from a breach of contract."). Consequential damages for defending the action brought in violation of an express covenant fall squarely within the goal of contract damages in New Hampshire — putting the non-breaching party in the same position it would have been in if the contract had been fully performed. See Audette, 165 N.H. at 770. Thus, under these circumstances, an action based upon a breach of a covenant not to sue does not create a circuity of action; rather, it permits the non-breaching party to pursue remedies necessary to put itself in the same position it would have been in had the breaching party adhered to its promise. See id.; see also Kaye, 135 A.3d at 906-07 (acknowledging the distinction between damages in the form of the award the breaching party obtained by violating the covenant not to sue and consequential damages incurred as a result of defending the action brought in violation of the covenant). Therefore, the policy reason for allowing a party to plead a covenant not to sue as an affirmative defense does not command that we foreclose a breach of contract action seeking consequential damages for a violation of a covenant not to sue.

Based upon our clearly established case law that has consistently recognized the distinction between an express covenant not to sue and a release, see Stateline, 150 N.H. at 338, and our canons of contract interpretation, we decline to adopt a rule that would "run contrary to our longstanding principle that all parts of an agreement are to be given a meaning whenever reasonably possible." Robbins, 145 N.H. at 419 (quotation omitted).

9

The defendants rely on the ruling of the Maryland Court of Special Appeals in Kaye, which held that an agreement "never to pursue a claim" will be given "the effect of a discharge unless the parties clearly express that they intend for the oblig[ee] to recover consequential damages as a result of the oblig[or]'s failure to honor" that agreement. Kaye, 135 A.3d at 907. We acknowledge that the Maryland Court of Special Appeals found the discussion in Corbin persuasive. See id. (quoting Jenkins, supra at 144-45). However, the agreement at issue in Kaye contained only the terms "[r]elease and forever discharge," rather than an express promise not to sue. Id. at 902-03. Thus, the Maryland Court of Special Appeals addressed a different question — whether a release and discharge of present and future claims was sufficient to constitute an implied promise not to sue, thereby providing a basis for the plaintiff's breach of contract claim. See id. To that extent, the Kaye court construed an express release as having the effect of a release; it did not construe an express covenant not to sue as having the effect of a release, which the defendants ask us to do here. See id. at 903, 907.

Furthermore, in reaching its conclusion, the Maryland Court of Special Appeals focused on the intent of the parties based upon the meaning of the terms of the agreement. See id. at 906-07. On this basis, it "decline[d] to impose a bright-line rule that may, in some circumstances, undermine an objective understanding of the parties' intent." Id. at 907. In doing so, the court appears to have left open the question of whether an agreement containing an express covenant not to sue would be sufficient to demonstrate the parties' intent to impose consequential damages for failure to honor the covenant. See id. ("[I]n construing the parties' contract, we aim to discern what a reasonable person in the position of the parties would have meant at the time it was effectuated to determine whether the parties sought a release, a covenant not to sue, or both." (quotation omitted)). Thus, not only do we disagree with the defendants that the holding in Kaye is equally applicable to the facts here, we are unconvinced that the court would necessarily have reached the same conclusion if the agreement in Kaye contained an express covenant not to sue. See id. at 903, 906-07; see also Cook v. SCI Md. Funeral Servs. Inc., No. 14-3770-GLR, 2016 WL 4536291, at *4 (D. Md. Aug. 31, 2016) (unpublished magistrate recommendation) (recommending, under Maryland law, that the court "decline to interpret the contract," which contained both a release and a covenant not to sue, "in a manner that is contrary to its plain meaning and which would render superfluous the express ongoing promise not to litigate," distinguishing Kaye). Therefore, we disagree with the defendants that Kaye supports their position.

We recognize, however, two other lines of cases that reject breach of contract claims based upon a violation of a covenant not to sue that does not include an express provision for damages. See Artvale Inc. v. Rugby Fabrics Corp., 363 F.2d 1002, 1006-08 (2d Cir. 1966); Bunnett v. Smallwood, 793 P.2d 157, 163 (Colo. 1990) (en banc). For the reasons that follow, we conclude that

10

the reasoning of these decisions is inconsistent with the law in New Hampshire, and we therefore decline to follow them.

In Artvale, the United States Court of Appeals for the Second Circuit declined to permit a claim for damages in the form of attorney's fees and costs incurred in defending an action brought in violation of a covenant not to sue. Artvale, 363 F.2d at 1008. It reached this conclusion because the agreement contained no express provision providing for such damages and there was no evidence demonstrating that the lawsuit was filed "in obvious breach or otherwise bad faith." Id. Courts in a number of jurisdictions have used this approach, though many of these cases involve the application of New York law, which the Second Circuit interpreted, in part, in Artvale. See id. at 1006-08 (concluding the result would be the same under both federal and New York law); Dallas Gas Partners, L.P. v. Prospect Energy Corp., 733 F.3d 148, 158-59 (5th Cir. 2013) (decided under New York law); Lubrizol Corp. v. Exxon Corp., 957 F.2d 1302, 1305-07 (5th Cir. 1992) (decided under New York law); Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 527, 529 (2d Cir. 1985) (decided under New York and California law); Cefali v. Buffalo Brass Co., Inc., 748 F. Supp. 1011, 1026-28 (W.D.N.Y. 1990) (decided under New York law); Borbely v. Nationwide Mut. Ins. Co., 547 F. Supp. 959, 966 n.12, 980-81 (D.N.J. 1981) (decided under New Jersey law); Quill Co., Inc. v. A.T. Cross Co., 477 A.2d 939, 944 (R.I. 1984).

Artvale provides little discussion of the Second Circuit's reasoning for adopting this rule. See Artvale, 363 F.2d at 1008. However, it concludes that "it is not beyond the powers of a lawyer to draw a covenant not to sue in such terms as to make clear that any breach will entail liability for damages, including the most certain of all — defendant's litigation expense." Id. It further notes that "distill[ing] all this out of the usual formal covenant would be going too far" because the "primary function" of the covenant not to sue "is to serve as a shield rather than as a sword, often being employed instead of a release to avoid the common law rule with respect to the effect of a release on joint tort-feasors." Id. In setting forth this reasoning, the Second Circuit appears to construe the purpose of a covenant not to sue as generally equivalent to that of a release. See id. Yet, the exceptions to its holding — suits brought in bad faith or in obvious breach — suggest that it recognizes the covenant as a promise that may be breached. See id.

As discussed previously, we reject the contention than an express covenant not to sue should be construed merely as a release. See Stateline, 150 N.H. at 338-39. Nor have we held that contracts must expressly provide for damages in order for an injured party to bring a breach of contract claim. We see no reason why we should treat parties who suffer damages as a result of a breach of an express promise not to sue differently from those who suffer damages for a breach of other types of contractual terms. Finally, we know of no case in which we have required a party to allege "bad faith" or an "obvious

11

breach" of express terms in a contract to maintain a breach of contract action. Rather, we have said that "[a] breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Lassonde, 157 N.H. at 588 (quotation and brackets omitted). Therefore, we conclude that the rule set forth in Artvale is inconsistent with New Hampshire law, and we decline to adopt it.

The cases that follow Bunnett, on the other hand, allow a party forced to litigate in violation of a release or agreement not to sue to recover consequential damages in the form of attorney's fees and costs only when there is "contractual, statutory or rule authorization for such an award." Bunnett, 793 P.2d at 163; see, e.g., Shumate v. Lycan, 675 N.E.2d 749, 751, 754-55 (Ind. Ct. App. 1997). In Bunnett, the Colorado Supreme Court did not rely on the distinction between the legal effect of a release and that of a covenant not to sue.[3] See Bunnett, 793 P.2d at 161-63. Rather, it rejected the claim for damages because (1) a party's position as a defendant in a lawsuit brought in violation of a release "is no different from that of any other defendant who prevails in a lawsuit and does not have a successful counterclaim for damages," and (2) permitting attorney's fees under these circumstances as an "exception" to the American Rule would expand the rule without any "principled way to contain [it]." Id. at 161; see Jesurum v. WBTSCC Ltd. P'ship, 169 N.H. 469, 482 (2016) (explaining that, under the American Rule, parties pay their own attorney's fees absent statutorily or judicially-created exceptions).

Numerous jurisdictions have adopted Bunnett or similar rules in cases involving releases and covenants not to sue. See Bukuras v. Mueller Group, LLC, 592 F.3d 255, 265-67 (1st Cir. 2010) (decided under Massachusetts law; release); In re Weinschneider, 395 F.3d 401, 404 (7th Cir. 2005) (decided under Illinois law; release and covenant not to sue); Child v. Lincoln Enterprises, Inc., 200 N.E.2d 751, 752-54 (Ill. App. Ct. 1964) (referring to the specific agreement signed by the plaintiff as a "Covenant Not to Sue," but referring to such agreements generally as a "release"); Shumate, 675 N.E.2d at 751, 754-55, 754 n.4 (release and agreement not to sue); Dodge v. United Services Auto. Ass'n, 417 A.2d 969, 970-71, 975-76 (Me. 1980) (oral agreement to settle an insurance claim). However, based upon our canons of contract interpretation and our breach of contract doctrine, we are unconvinced that this reasoning should apply to covenants not to sue under the law in New Hampshire.

---

[3] The Colorado Supreme Court framed the question presented in Bunnett as follows: "whether the prevailing party in a lawsuit can recover attorney fees and costs for breach of an agreement not to sue." Bunnett, 793 P.2d at 159. However, the court noted that the parties used the words "release," "covenant not to sue," and "settlement agreement" interchangeably and stated that it would use the word "release" to refer to the relevant contractual provision for the purposes of the opinion. Id. at 159 n.2.

First, a party's position as a defendant in a lawsuit brought in violation of a covenant not to sue, who brings a counterclaim for breach of that covenant, is different from the position of defendants in other lawsuits who prevail in defending against the lawsuit but do not have a counterclaim for damages. See Bunnett, 793 P.2d at 161. Unlike defendants in other lawsuits, a defendant in an action brought in violation of a covenant not to sue bargained to receive, and exchanged consideration for, the opposing party's promise that it would forbear from bringing suit. Under these circumstances, the lawsuit itself is the object that the bargain intended to prohibit. Therefore, unlike defendants in other types of lawsuits, a defendant in a lawsuit brought in violation of a covenant not to sue loses the benefit of the bargain with no recourse if it is prohibited from bringing an action for breach against a party who violated an express term of a contract.

Second, an action for consequential damages caused by a breach of an express covenant not to sue does not create an untenable exception to the American Rule. See id. While we follow the American Rule in New Hampshire and recognize the statutory and common law exceptions, see Jesurum, 169 N.H. at 482, consequential damages resulting from a breach of a covenant not to sue may include, but are not limited to, attorney's fees and costs in defending the action. See Drop Anchor Realty, 126 N.H. at 678. Moreover, when a party requests attorney's fees and costs in defending the action as consequential damages for breach of a covenant not to sue, this request does not seek an award of attorney's fees within the meaning of the American Rule. Rather, under these circumstances, attorney's fees and costs help to put the non-breaching party in the position it would have been in had the breach not occurred. See Audette, 165 N.H. at 770; Microsoft Corp. v. Motorola, Inc., 795 F.3d 1024, 1049 (9th Cir. 2015) (noting the "critical factor" that the attorney's "fees at issue here were incurred not in the current breach of contract action but in defending against the . . . action found to have breached the . . . agreement"); Anchor Motor Freight, Inc. v. Intern. Broth. of Teamsters, 700 F.2d 1067, 1071-72 (6th Cir. 1983) (determining that the American Rule did not apply where the defendant's claim for attorney's fees was "a measure of the actual damages which [the defendant] incurred in defending against the lawsuit which [the plaintiff] instituted purportedly in violation of the covenant not to sue"). Therefore, by recognizing a breach of contract action for consequential damages in these circumstances, we are not creating a new exception to the American Rule; rather, we are permitting a party to pursue a claim for damages pursuant to ordinary contractual principles. See Audette, 165 N.H. at 770.

Furthermore, we disagree with the Colorado Supreme Court that the statutory and rule-based exceptions to the American Rule would "adequately protect the non-breaching party." Bunnett, 793 P.2d at 162. Similar to Colorado law, see id., New Hampshire law permits trial courts to award a prevailing party attorney's fees and costs for suits brought in bad faith. See

Frost v. Comm'r, N.H. Banking Dep't, 163 N.H. 365, 377-78 (2012). These exceptions provide no recourse, however, for parties seeking relief in addition to attorney's fees and costs. Further, even when the party seeks only attorney's fees and costs in defending the unlawful action, the party may receive those fees and costs only if the trial court finds that the circumstances fall within a recognized exception. See, e.g., Frost, 163 N.H. at 378 (explaining that an award of attorney's fees is appropriate under the bad faith litigation exception where one party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, where the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and where it should have been unnecessary for the successful party to have brought the action). Thus, unlike a damages award for a successful breach of contract action, an award of fees and costs under an exception to the American Rule may not provide complete relief to a party who has been injured by a breach of a covenant not to sue.

We recognize that a party bringing suit in contravention of a covenant not to sue may do so in good faith, where, for example, the party believes the covenant not to sue is void ab initio or otherwise unenforceable. See, e.g., Syncom Indus. v. Wood, 155 N.H. 73, 82-83 (2007) (finding contract unenforceable where there was no meeting of the minds on an essential term). Other jurisdictions have pointed to such lawsuits, where the plaintiff challenges in "good faith" the existence or validity of the covenant not to sue, as grounds for rejecting claims for consequential damages for breach of a covenant not to sue. See, e.g., Wolcott v. Ginsburg, 697 F. Supp. 540, 547 (D.D.C. 1988) ("When parties challenge in good faith the very existence or validity" of a covenant not to sue, "they [cannot] be penalized for so doing."); see also Bunnett, 793 P.2d at 163 ("[W]here, as here, the nature and scope of the agreement itself is ambiguous, [an] award of attorney fees and costs in the absence of an express contractual provision would be unfair."); Winchester Drive-In Th. v. Warner Bros. Pictures Dist. Corp., 358 F.2d 432, 436 (9th Cir. 1966) (concluding that each party should bear its own costs where the appellant disputed in good faith the existence of the covenant not to sue). We therefore note that a successful challenge to the validity of a covenant not to sue would preclude a claim for breach. Absent this, however, we find no basis to depart from our view that, "as a matter of efficiency and freedom of choice, parties should be able to contract freely about their affairs." Barnes v. N.H. Karting Assoc., 128 N.H. 102, 106 (1986). If parties do not wish to bear the risk of liability for another party's consequential damages, they are free to contract accordingly. However, we see no reason why we should shield the parties from the consequences that may result from the breach of an express term of a contract to which they agreed. See id.

Accordingly, we decline to adopt the approach taken by the courts in Artvale and Bunnett and join instead those courts that permit a breach of contract claim for consequential damages based upon an express covenant not to sue. See, e.g., Anchor Motor, 700 F.2d at 1072; Paper, Allied, Chemical v.

14

<u>Slurry Explosive Corp.</u>, 107 F. Supp. 2d 1311, 1331 (D. Kan. 2000). Thus, we conclude that the trial court erred in dismissing the plaintiff's breach of contract claim. In reaching this conclusion, we express no opinion about the merits of the plaintiff's claim or any defenses the defendants may raise.

The plaintiff's remaining claims of tortious interference with contractual relations and civil conspiracy allege that the defendants interfered, and conspired to interfere, with contractual relations in order to cause the breach of contract, which, as alleged in the amended complaint, is the breach of the release agreements. After determining that the "Releases . . . operated as releases" and could not be grounds for a breach of contract action, the trial court concluded that the plaintiffs' remaining claims were not reasonably susceptible to a construction that would permit recovery because they "rest[ed] on a theory that the parties . . . to the Releases maintained a contractual relationship that imposed ongoing duties to the Plaintiff." Because we have determined that an express covenant not to sue constitutes a promise that may be breached, the trial court's dismissal of the plaintiff's claims of tortious interference with contractual relations and civil conspiracy in reliance on its erroneous conclusion was also error.

In light of our decision, we need not address the parties' remaining arguments. We therefore reverse and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.

LYNN, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.

15