# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0645, <u>In re Simone Garczynski Irrevocable Trust</u>, the court on July 29, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The appellant, James Garczynski (James), who is both trustee and a beneficiary of the Simone Garczynski Irrevocable Trust (trust), appeals an order of the Circuit Court (<u>Quigley</u>, J.), following a hearing, allowing Michael Garczynski (Michael), who is James's brother and also a beneficiary of the trust, to purchase certain real property that James had acquired from the trust in 2017. On appeal, James argues that in allowing Michael to purchase the property, the trial court erred by setting aside an earlier final order in the absence of a claim of fraud, accident, mistake, or misfortune. <u>See</u> <u>In the Matter of Harman & McCarron</u>, 168 N.H. 372, 375 (2015). He further argues that the trial court's alleged "refusal to enforce the terms of the" prior order is entitled to no deference, and that the trial court erred by not enforcing certain terms of the prior order and by not finding that Michael had "unclean hands."

The trial court proceedings at issue in this case follow our order in <u>In re Simone Garczynski Irrevocable Trust</u>, No. 2017-0487, 2018 WL 3581069 (N.H. July 26, 2018) (<u>Garczynski I</u>). In <u>Garczynski I</u>, we vacated a trial court decision that had denied Michael's motion to invalidate the trust's 2017 conveyance of the property to James and to compel its conveyance to Michael. In vacating the trial court's decision, we ruled that the trial court had plainly erred by ruling that Michael had forfeited his right to purchase the property under an earlier court order and mediation agreement because the evidence established that James, as trustee of the trust, had unequivocally refused to convey the property in accordance with the terms of the earlier order on the mistaken belief that Michael's deadline for purchasing the property had passed.

On remand, the trial court held an evidentiary hearing. At the hearing, Michael testified that if the trial court allowed him to purchase the property, he should be required to pay the trust, and not James, because the trust had earlier owned the property, and because he did not trust James to disburse the purchase money to the trust's beneficiaries. However, the record establishes that James had already paid the trust for the property in 2017.

By notice of decision dated February 8, 2019, the trial court ruled that Michael was entitled to purchase the property from James. Under the terms of the order, Michael was granted "30 days from the date of the notice of decision" to purchase the property, "unless extended by agreement of counsel in writing." The February 8 order further provided that, if either party found "it appropriate to extend Michael's time to purchase the property," that party was to send a written request to extend the deadline both electronically and by mail "no later than 25 days from the date of this notice." The parties were then required to attempt to "schedule the [closing][1] within the remaining 5 days of the 'purchase period,'" and if they were "unable to do so, they shall agree to a closing date no later than 45 days from the date of the notice of decision." The order required Michael to provide, at closing, separate bank checks payable to James in the amounts of $193,000 for the purchase price and $12,330 for one-half of the carrying costs of the property from the time that James purchased it in January 2017 through January 2019. If the closing did not occur "within 45 days from the date of the notice of decision," the order provided that Michael's right to purchase the property would be extinguished. Michael timely moved to reconsider certain aspects of the February 8 order on February 19, 2019.[2] The trial court denied the motion by notice of decision dated March 11, 2019, and neither party appealed. Accordingly, the February 8 order became a final judgment on April 11, 2019. See Prob. Div. R. 74(b).

On March 4, 2019, while the motion for reconsideration was pending, Michael deposited two checks into the trust in the amounts of $193,000 and $12,330, for the purchase. According to the trust, the checks were "both made payable to the Simone Garczynski Irrevocable Trust," rather than to James. Michael's attorney advised James's attorney of the deposit "at that time," and requested that the funds be taken from the trust's account for a closing to

---

[1] The text of the February 8 order stated that the parties were required to attempt to "schedule the hearing within the remaining 5 days of the 'purchase period'" if a party requested an extension of the closing period. (Emphasis added.) However, in its August 14, 2019 order, which is the subject of this appeal and, as discussed below, contained substantially identical terms to the February 8 order, the trial court changed the word "hearing," to "closing." Because there is no other reference to a "hearing" in the February 8 order to which the definite article "the" could be referring, and in light of the context of the order and the trial court's alteration of the word "hearing" to "closing" in the August 14 order, we conclude that the word "hearing" was intended by the trial court to be "closing."

[2] In his reply brief, James asserts that this motion was untimely because February 19 was the eleventh day from the February 8 notice of decision. We note, however, that Monday, February 18, 2019, was the third Monday of February 2019, and was, therefore, a holiday during which the court was closed. See RSA 288:1 (2016) (establishing the third Monday of February, Washington's Birthday, as a legal holiday); see also Supreme Court Admin. Order 2018-02 (establishing judicial branch holiday schedule for 2019, including Washington's Birthday on Monday, February 18, 2019). Accordingly, the deadline for filing the motion for reconsideration was February 19, and not February 18. See Prob. Div. R. 12.

2

occur on March 8.  On March 7, counsel for James responded that "they would get the money back to Michael Garczynski as quickly as they reasonably" could, but that James "objected to the payment occurring in the way it was proposed and indicated that Michael Garczynski needs to present the appropriate bank checks payable to James Garczynski personally or this sale will not be happening."  Counsel for James further stated on March 7 that the closing would not occur on March 8, but would occur on March 11.

On March 11, 2019, counsel for Michael appeared at the office of James's attorney for the closing.  Counsel for James then advised that the closing would not occur unless Michael's attorney had a check made payable to James.  At that point, however, the trust had not yet returned the funds that Michael had paid for the purchase.  The parties interpreted the deadlines under the February 8 order as running from the notice of decision on the February 8 order rather than the notice of decision on Michael's timely motion for reconsideration, and on March 12, 2019, less than forty-five days from February 8, Michael's counsel requested an extension of the deadline "because the money in the trust was accessible to James," and "if he insisted for payment in another way, . . . the money would have to be returned and . . . another check written."  On March 15, 2019, counsel for James responded by letter stating that James "does not agree to any extensions of the deadline"; enclosed with the letter were checks, dated March 12, executed by James on behalf of the trust to Michael in the amounts Michael had paid on March 4.  Michael's attorney received the March 15 letter on March 18.

Michael did not cash the checks from the trust.  Rather, his counsel maintained possession of them, and on April 9, 2019, two days before the February 8 order went to final judgment, Michael filed a motion seeking to compel the transfer of the property using the funds that he had paid the trust on March 4.  James objected, arguing that, because Michael had not provided a bank check payable to James for the purchase, he had failed to comply with a condition precedent for the purchase and, thus, was not entitled to purchase the property.  At a hearing on the motion, Michael's attorney conceded that by making the March 4 checks payable to the trust, Michael had not literally complied with the requirement that he provide checks payable to James.  However, he argued that because the funds were available to James, and because Michael did not, after depositing the funds into the trust, have other funds with which to write a check to James, the transfer should be allowed to occur with the funds that Michael had already paid the trust for the purchase.  Michael's attorney represented that the reason Michael had placed the funds into the trust "was that he doesn't trust James with the money."

On August 14, 2019, the trial court ruled on the motion.  The court observed that the February 8 order was "very specific" and "detailed," that Michael was required under the order "to provide a bank check payable to James . . . for the full amount owed," that Michael "was well aware" that

James, and not the trust, owned the property, and that Michael's "deliberate actions in disregarding the court orders [by paying the closing funds to the trust] has delayed resolution of the ownership of the property and caused additional litigation." Nevertheless, the trial court noted that it was "a court of equity," and that Michael "did provide funds for the purchase and for the amount then ow[ed] to James . . . for house expenses." Thus, after "consider[ing] . . . the information provided at the hearing and in the pleadings," the trial court ruled that Michael would be allowed "another opportunity to purchase" the property. The trial court set forth terms for the purchase that were substantially identical to those terms set forth in the February 8 order. In addition, the trial court: (1) authorized James, as trustee, to withdraw the funds deposited by Michael into the trust on March 4 and to pay such funds to himself for the purchase if Michael had not cashed the March 12 checks returning the funds to him;[3] (2) ordered Michael to reimburse James for all of the attorney's fees that James had incurred since February 2019, and for half the carrying costs for the property during the same time frame; and (3) authorized James, as trustee, to reimburse himself for the attorney's fees and carrying costs from Michael's distributive share of the trust.

James moved for reconsideration, arguing that the February 8 order was a final order, that the trial court has authority to "revisit a prior final order" if it "becomes aware that [the] prior ruling may be legally incorrect," and that, although the court "has broad discretion to enter rulings and orders in an equity matter," it lacks discretion "to ignore previous orders." Because the February 8 order provided that Michael's right to purchase the property would be extinguished if the closing did not occur within forty-five days, and because the trial court found that Michael had not provided a bank check payable to James for the closing amount within the closing period, James argued that the trial court had plainly erred by allowing Michael an opportunity to purchase the property. The trial court denied the motion, and this appeal followed.

At the outset, we conclude that James has not preserved his argument that the trial court erred by setting aside the February 8 order because there was no claim of fraud, accident, mistake, or misfortune. It is a longstanding rule that parties may not have review of arguments that they did not raise in the trial court. Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). "The trial court must have had the opportunity to consider any issues asserted by the appellant on appeal; thus, to satisfy this preservation requirement, any issues which could not have been presented to the trial court prior to its decision must be presented to it in a motion for reconsideration." McDonough v. McDonough, 169 N.H. 537, 545 (2016); see also Prob. Div. R. 59-A(1).

---

[3] At a subsequent hearing on James's motion to reconsider the August 14 order, counsel for Michael confirmed that he, and not Michael, had possession of the March 12 checks, and that the checks had not been cashed.

Nowhere in his objection to the motion to compel transfer of the property did James argue that, because the February 8 order was final, Michael was required to establish fraud, accident, mistake, or misfortune. Nor did James argue in his motion for reconsideration that the trial court had erroneously set aside or vacated the February 8 order because there was no fraud, accident, mistake, or misfortune. To the contrary, although James asserted that the February 8 order was final, he suggested that the trial court had authority to revisit the order if it determined that the order was "legally incorrect."[4]

Even if the argument were preserved, however, we do not construe the August 14 order as having vacated or set aside the February 8 order. The interpretation of a court order is a question of law, which we review de novo. In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008). As a general rule, a court decree or judgment is to be construed with reference to the issues it was meant to decide. Id. at 703.

In this case, each party was seeking to enforce the terms of the February 8 order. Michael was arguing, in effect, that although he had not produced a bank check made out to James individually, he had substantially complied with the order by timely depositing the closing funds into a trust controlled by James and requesting that James use those funds for the closing. Michael pointed out that when James insisted on bank checks made out to him, James failed either to timely return the funds that Michael had paid the trust so that a timely closing could occur, or to agree to an extension of the closing deadline. Thus, he was requesting that the trial court enforce the February 8 order by compelling the conveyance of the property with the funds he had already paid. James, on the other hand, was arguing that strict compliance with the provision requiring bank checks made out to James was required. Because Michael had not complied with that requirement, James argued that Michael's right to purchase the property had been extinguished under the terms of the February 8 order. Thus, James was essentially seeking a judicial determination that Michael had forfeited his right to purchase the property.

Within this context, we construe the August 14 order as determining that Michael had substantially complied with the February 8 order, and enforcing the February 8 order by allowing the purchase to proceed under the circumstances and requiring Michael to make James whole for the damages Michael's lack of strict compliance with the February 8 order had caused. The trial court had inherent authority to enforce its earlier judgment. See generally In the Matter of Kosek & Kosek, 151 N.H. 722, 726-27 (2005). Such authority is within the trial court's sound discretion, and we will not overturn the trial court's decision absent an unsustainable exercise of discretion. Cf. Simpson v. Young, 153 N.H. 471, 480 (2006) (addressing the trial court's refusal to hold a

---

[4] We express no opinion as to the accuracy of this assertion.

party in contempt). Substantial compliance with a court order will generally allow a party to avoid a finding of contempt, even if that party's conduct does not strictly conform to the requirements of the prior order. Accusoft Corp. v. Palo, 237 F.3d 31, 47 (1st Cir. 2001); cf. Rand v. Rand, 4 N.H. 267, 277 (1828) (rejecting challenge to service on basis that service was in "substantial compliance with the spirit of the order of the judge of probate"). Accordingly, we reject James's contention that the trial court's alleged "refusal to enforce the terms of the February 2019 order" is entitled to no deference.

In this case, we conclude that the trial court acted well within its discretion. Even if the thirty-day deadline to close ran from the February 8 notice of decision, and not the March 11 notice of decision on Michael's timely motion for reconsideration,[5] the record establishes that Michael paid the trust, which was controlled by James and had previously owned the property, the closing funds on March 4, well within the deadline. The record further establishes that Michael's attorney notified James's attorney of the deposit "at that time," and requested that the funds be used at a March 8 closing. Notwithstanding the requirement that a party seeking to extend the thirty-day deadline notify the other party of the need for an extension within twenty-five days of the notice of decision, James's attorney responded on March 7, more than twenty-five days after February 8, by rescheduling the closing to March 11, insisting that Michael provide a bank check to James personally at the closing, and committing to returning the funds that Michael had paid the trust "as quickly as they reasonably" could. James did not, however, return the funds to Michael so as to allow Michael to obtain a bank check for the March 11 closing. Moreover, notwithstanding the parties' obligation to agree to a closing date within forty-five days of February 8 if an extension were deemed necessary, James refused any extension other than the extension that he had unilaterally scheduled, and did not return the funds to Michael until after the March 11 closing date had passed.

On this record, we conclude that the trial court sustainably exercised its discretion by allowing Michael to purchase the property, by not strictly applying the provision of the February 8 order stating that the right to purchase would be extinguished if the closing did not occur within forty-five days, and by ordering Michael to reimburse James for the costs James had incurred as a result of Michael's failure to provide bank checks payable to him. Likewise, we conclude that the trial court sustainably exercised its discretion by not finding that Michael had "unclean hands" barring equitable relief. See Polonsky v. Town of Bedford, 173 N.H. ___, ___ (decided April 24, 2020) (slip op.

---

[5] Since the parties, both in the trial court and on appeal, have interpreted the February 8 order as calculating the thirty-day and forty-five-day deadlines from the notice of decision on the February 8 order, we will assume, without deciding, that this interpretation of the February 8 order is correct.

at 12-13) (rejecting unclean hands argument on basis that trial court's decision to allow equitable relief was not an unsustainable exercise of discretion).

<u>Affirmed</u>.

Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**